UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------------------x

N.L.,
                              Plaintiff,


                v.


NATIONAL BOARD OF MEDICAL EXAMINERS,

                                                        Case No.:

                                                        March 16, 2018

                                                        JURY DEMAND


                              Defendant.

------------------------------------------------------------------------x

## COMPLAINT

Plaintiff N.L. (hereinafter "Plaintiff" or "N.L.") brings this complaint against the

Defendants, National Board of Medical Examiners (hereinafter "the NBME" or "Defendant"),

seeking monetary, injunctive, and declaratory relief, and alleges as follows:


## <u>INTRODUCTION</u>


1.      This is an action for injunctive, monetary and declaratory relief against the

Defendant, based on its discriminatory conduct against Plaintiff, a person with disabilities

protected by federal, state and local disability civil rights protections.

2.      Plaintiff is presently eligible to sit for the United States Medical Licensing

Examination (hereinafter "USMLE") Step 1 from March 1, 2018 through May 31, 2018.   In

connection therewith Plaintiff requested specific modifications, auxiliary aids, and/or services

(hereinafter collectively referred to as "testing accommodations") more particularly, 50%

extended testing time (also referred to as "time and-a-half") on all sections of the USMLE.   This

test accommodation is necessary in order for the USMLE to be accessible to Plaintiff because of his disabilities, which substantially limit one or more major life activities and/or major bodily functions.

3.     Defendant has discriminated against Plaintiff by its failure to provide testing modifications or accommodations in violation of the Americans with Disabilities Act, as amended (hereinafter "ADA"), 42 U.S.C. §12101, *et seq.*  Permanent injunctive relief is necessary to ensure that Plaintiff is no longer excluded from, deterred from or otherwise discriminated against in taking the USMLE.

4.     Plaintiff has submitted to the NBME extensive documentation of his disabilities and entitlement to testing accommodations as required by the NBME's policies, practices and procedures for requesting such testing accommodations.  The NBME has failed to provide Plaintiff with the accommodations he needs to make the USMLE accessible to him.  Plaintiff brings this action to enforce his rights to equal access under the ADA.

5.     The Defendant administers the USMLE, a standardized exam and requisite for medical licensure in the United States.  The NBME has the legal, educational and professional responsibility to offer testing accommodations to individuals with disabilities on the USMLE. Such accommodations, which are neither expensive nor difficult to provide, allow individuals with learning disabilities and other brain-based disabilities, like Plaintiff, to demonstrate their medical knowledge as assessed by the USMLE.

## JURISDICTION

6.     These claims arise under the ADA and this Court has subject matter jurisdiction based on a federal question under 28 U.S.C. §§1331 and 1343(a)(4).  This Court also has jurisdiction pursuant to: (1) 42 U.S.C. § 2000(a), providing for civil actions in this Court by any

person subjected to discrimination on the basis of disability in violation of Title III of the ADA

and (2) 28 U.S.C. § 1343 for any civil rights action authorized by law.

7.      This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C.

§2201(a) and further relief pursuant to 28 U.S.C. §2202.

8.      Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391, in that

acts of discrimination have taken place in this District and Plaintiff's permanent residence is

within this District.

## **PARTIES**

9.      Plaintiff, a permanent resident of North Haven, Connecticut, is a 31 year-old

medical student at Yale School of Medicine (hereinafter "Yale").  Yale originally required

Plaintiff to take USMLE Step 1 in 2014.

10.      In or around the spring of 2014, Plaintiff requested extended time testing

accommodations for USMLE Step 1 and Step 2 CK, which purports to assess a candidate's

Clinical Knowledge.  By letter dated June 3, 2014 Defendant denied Plaintiff's request for

accommodations and asserted that he was not an individual with a disability entitled to

accommodations.

11.      Plaintiff subsequently requested reconsideration by letter dated October 9, 2015.

By letter dated December 31, 2015 Defendant once again denied Plaintiff's request for

accommodation.

12.      Plaintiff has taken USMLE Step 1 twice without accommodations, on March 30,

2016 and September 5, 2017. Plaintiff has failed each attempt, not for lack of knowledge and

preparation, but due to a lack of sufficient time to fully and accurately read, comprehend, and

respond to the questions presented on the exam.

13.    Plaintiff's impairments substantially limit him in the performance of numerous major life activities including, but not limited to, reading, writing, concentrating, thinking, learning, working, and taking tests.

14.    Plaintiff's impairments also substantially limit him in the operation of brain and neurological functioning.

15.    NBME is a not-for-profit organization headquartered in Philadelphia, Pennsylvania.  NBME administers the USMLE, a three-step examination, the successful completion of which is required for medical licensure in the United States.  Additionally, an examinee's level of performance on the USMLE is a prominent factor used in the highly competitive candidate selection process by residency training programs.  Defendant is a private entity that offers examinations related to applications and credentialing to postsecondary education, professional and trade purposes and as such is subject to the non–discrimination and reasonable accommodation requirements of the ADA and state and local disability civil rights laws. The NBME administers the USMLE throughout the country.

## FACTUAL ALLEGATIONS

16.    Plaintiff is a 31 year-old permanent resident of North Haven, Connecticut and is a student at Yale School of Medicine.

17.     Plaintiff has been diagnosed with learning disabilities which consist of discrete processing deficits significantly inconsistent with his intellectual abilities as established through widely accepted measures of intellectual ability.  Most people do not have such discrepancies.

18.    Plaintiff underwent his first formal psychoeducational evaluation in 2002. Subsequent to this evaluation at the Yale Child Study Center, Plaintiff has been evaluated by numerous clinicians and has, on the recommendations of these clinicians, received extended test

time as an accommodation in high school and college, as well as for the college admissions

exams offered by the College Board and the medical school admissions test offered by the

Association of American Medical Colleges.

19.     Plaintiff commenced his medical education at Yale in August 2012. At Yale:

> attendance is not taken, and much basic science instruction occurs
> in small-group seminars or conferences. Students evaluate
> themselves through optional, anonymous examinations. Their
> performance is assessed by the faculty through participation in
> seminars, by an anonymous (but coded) qualifying examination at
> the end of each course, by performance on clinical clerkships, and
> by passing the United States Medical Licensing Examinations
> (USMLE).
>
> In the first two years, there are no grades and there is no class
> ranking.[1]

20.     Plaintiff was expected to take and pass USMLE Step 1 before the beginning of his

third year of medical school.   Plaintiff was unable to take and pass USMLE Step 1 by this

deadline because Defendant NBME denied his request for testing accommodations.  Plaintiff is

currently expected to and take and pass USMLE Step 1 and USMLE Step 2CK before his

expected graduation in May 2018.

21.     Plaintiff first requested USMLE Step 1 and Step 2 CK extended time

accommodations in or around the spring of 2014.  The documentation submitted in support of

this request included: (a) a personal statement; (b) verification of Plaintiff's receipt of extended

time accommodations on prior standardized exams; (c) verification of Plaintiff's receipt of

extended time accommodations in high school and college; and (d) the report of a January 2011

comprehensive psychoeducational evaluation by Denis Sukhodolsky, Ph.D. and Lesley A. Hart,

Ph.D. from the Yale Academic Skills Clinic, explained the nature of Plaintiff's disabilities, and

---

[1] The Yale System and Education Mission, https://medicine.yale.edu/education/curriculum/yalesystem.aspx (last visited February 15, 2018).

recommended that he be accommodated with 50% extended time on his standardized exams.

22.    Dr. Sukhodolsky and Dr. Hart summarized their findings, writing, in part:

> The general pattern is the same… he continues to demonstrate
> more difficulty with timed tasks than with untimed… Overall,
> [N.L.] demonstrated cognitive ability in the Very Superior range.
> He worked slowly and accurately, such that timed tasks resulted in
> lower scores.  [N.L.'s] 25-point discrepancy between verbal
> comprehension and working memory is found in less than 3% of
> the population… results of the WJ-III-Ach support that [N.L.'s]
> slow speed of processing negatively affects his ability to
> demonstrate his true ability without additional time… It is clear
> from the reading rate scores that reading speed significantly affects
> [N.L.'s] ability to complete work… an additional allotment of
> time, for a total of 1.5 time, is sufficient to correct for his slower
> processing.

23.    By letter dated June 3, 2014, the NBME denied Plaintiff's request for accommodations and asserted that the submitted documentation did not demonstrate that Plaintiff is substantially limited in a major life activity as compared to most people or that extended time is an appropriate modification of his USMLE administration.

24.    Subsequent to this denial Petitioner underwent additional assessment by Sally Shaywitz, M.D., Co-Director of the Yale Center for Dyslexia and Creativity.  He also retained legal counsel – Jo Anne Simon P.C.  By letter dated October 9, 2015, one of Plaintiff's attorneys, Mary J. Goodwin-Oquendo, sought reconsideration of the NBME's prior denial of accommodations and submitted the following additional supporting documentation:

a.    The report of a December 2002 psychoeducational evaluation by Sara Sparrow,

Ph.D. of the Yale Child Study Center.  Dr. Sparrow's report detailed her findings

and conclusions.  She wrote, in part:

> Noticeable during the testing was the length of time [N.L.] needed
> to complete tasks… he consistently demonstrated a slow
> processing speed…

> [N.L.] developed a similar cognitive profile.  On the more highly "g" loaded subtests of the [the Woodcock-Johnson III Tests of Cognitive Abilities], [N.L.] exhibits a very strong intelligence, while those subtests where speed of performance is a strong factor yielded scores significantly lower.  It is clear that [N.L.] has difficulty in demonstrating his very high competence when speed of processing and performance is required…
>
> In addition, [N.L.]'s slow processing was often apparent as he worked on the achievement tasks…
>
> The discrepancy between his Verbal and Performance abilities is highly significant and demonstrates unevenness in his cognitive competencies.  The cognitive achievement tests administered to [N.L.] reveal that [N.L.] has a learning disability characterized by speed of processing deficit that affects his ability to demonstrate adequately his considerable competence when he has insufficient time… [N.L.] should be allowed 50% extended time for his exams both at school and on all standardized exams… The time extension is necessary for [N.L.] to demonstrate his knowledge and competencies.

b.  A February 16, 2015 letter from Sally Shaywitz, M.D., Co-Director of the Yale

Center for Dyslexia.  Dr. Shaywitz recommended 50% extended time as a

USMLE accommodation and wrote, in part:

> During December 2014, [N.L.] participated in an evaluation at the Yale Center for Dyslexia & Creativity… The results of the Comprehensive Test of Phonological Processing (CTOPP) show relative deficiencies in Phonological Awareness… Phonological Memory…and Alternate Phonological Awareness…subtests, scores that are unexpectedly very low, more than two standard deviations below [N.L.'s] Very Superior Verbal Comprehension Index… [N.L.] is unable to fluently apply decoding strategies at a level commensurate with his ability, and this contributes to his slow silent reading rate…He lacks the automaticity to read fluently and efficiently. (It is notable that [N.L.] appeared frustrated when he was unable to complete all of the comprehension questions during the first 20-minute timed portion of the NDRT, however, all of the items he did answer were correct.

c.  A September 28, 2015 letter from Phillip M. Stewart, Ph.D., Plaintiff's former

high school teacher.  Mr. Stewart wrote, in part:

[N.L.] pulled off an incredible feat in my Physics 110 course in
2002-2003. While he was not my strongest student, he was a
contender for the most satisfying; he failed the first two tests in
physics and I almost suggested that he drop to the lower level
class, but it turned out that all [N.L.] needed was more time on
each test, and this brought him up to a level beyond what I had
hoped… In speaking with [N.L.]'s other teachers, I found that they
felt the same way.  He took academics so seriously, and when he
was given the time to concentrate and process information, he did
great things.  That [N.L.] was able to lift his grade from failing to
an A- in his second semester showed what a committed student he
was and how crucial extended test time was for him… [N.L.]'s
work ethic is incredibly impressive, but I have no doubt that his
knowledge will be unable to shine through if he is not given
extended time for the USMLE.

d.  A personal statement from Plaintiff, dated August 19, 2015, wherein he explains

why it is critical that he receive 50% extended time to accommodate his

disabilities on Step 1 and Step 2 CK.  In order to read and comprehend accurately,

Plaintiff must read slowly, and repeatedly. This is a time consuming process but it

is how he has been able to achieve academic success with his learning disabilities.

Plaintiff wrote, in part:

In many subjects, my test grades were not poor, but neither were
they an accurate reflection of my knowledge, as demonstrated by
my excellent homework assignments, papers, and projects.   I
regularly lost points for incomplete questions, which I found
frustrating because I knew the material.  … I recall one of my
middle school English teachers allowing me to complete my exams
after class during my lunch period because she recognized that
running out of time was causing my grades to be lower than
expected.

e.  A letter from Plaintiff's mother, dated August 11, 2015.  In this letter, Plaintiff's

mother described the impacts of Plaintiff's longstanding disabilities.

25.    The documentation referenced above substantially complied with the NBME's

written policy regarding requests for disability testing accommodations.

26.      By letter dated December 31, 2015, Defendant denied Plaintiff's request for

testing accommodations.   In this two-page letter, Defendant acknowledged that it received and

reviewed documentation from several clinicians who had or continue to have firsthand

knowledge of Plaintiff's disabilities, and who recommended extended time accommodations.

Nevertheless, Defendants wrote, in part:

> A diagnostic label, in and of itself, does not establish coverage
> under the ADA, nor does prior receipt of accommodations for a
> particular activity guarantee that identical accommodations are
> indicated or will be available in all future settings and
> circumstances. The ADA covers individuals who are substantially
> limited in a major life activity. Determination of whether an
> individual is substantially limited in functioning as compared to
> most people is based on assessment of the current impact of the
> identified impairment.
>
> Your documentation does not demonstrate that you are currently
> substantially limited in a major life activity as compared to most
> people or that additional testing time is an appropriate modification
> of your USMLE Step 1 and Step 2 CK test administrations.
> Therefore, after a thorough review of all of your documentation, I
> must inform you that we are unable to provide you with the
> requested accommodations.

27.      A February 22, 2011 press release[2] from the United States Department of

Justice's Office of Public Affairs describes the United States' settlement agreement with the

NBME in connection with a complaint filed by a medical student who alleged that the NBME

had twice denied him testing accommodations necessitated by his dyslexia in violation of the

ADA:

> Under the agreement, the NBME will:
>
> Only request documentation about (a) the existence of a physical
> or mental impairment; (b) whether the applicant's impairment
> substantially limits one or more major life activities within the
> meaning of the ADA; and (c) whether and how the impairment

---

[2] https://www.justice.gov/opa/pr/justice-department-settles-national-board-medical-examiners-over-refusalto-provide-testing (last visited February 15, 2018).

limits the applicant's ability to take the USMLE under standard
conditions.

Carefully consider the recommendations of qualified professionals
who have personally observed the applicant in a clinical setting
and recommended accommodations based upon their clinical
judgment that the individual is substantially limited in one or more
major life activities within the meaning of the ADA and needs the
requested test accommodations in order to demonstrate his or her
ability and achievement level; such recommendations are to be
based on generally accepted diagnostic criteria and supported by
reasonable documentation.

Carefully consider all evidence indicating whether an individual's
ability to read is substantially limited within the meaning of the
ADA, including the extent to which it is restricted as to the
conditions, manner or duration as compared to the reading ability
of most people.

28.    Plaintiff alleges that Defendant NBME's repeated denial of his request for

accommodations is a violation of its own settlement agreement with the United States.

29.    Plaintiff most recently sat for USMLE Step 1 on September 5, 2017 without

accommodations and, as foreseen by him and his doctors, he was unable to pass the exam

because he did not have sufficient time to accurately read, reread, comprehend, and complete the

exam.  Plaintiff describes his efforts to keep up with the clock as "frantic" and recalls that for

each administration he would fall further behind as exam progressed.  Plaintiff also recalls that

he had to sacrifice accuracy for speed and had to guess on a significant number of test questions.

30.    Plaintiff's medical school has informed him that if he does not take and pass

USMLE Step 1 by his expected graduation in May 2018 he may face dismissal from his medical

degree program.

31.    Plaintiff alleges that Defendant's reason for denial is speculative and violates the

ADA as well as state and local laws and regulations.  ADA regulations state:

    a.   "The term 'substantially limits' shall be construed broadly in favor of expansive

coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

b. "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii).

c. "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(iii).

d. The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for "substantially limits" applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(1)(iv).

e. "The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis.

- 11 -

Nothing in this paragraph is intended, however, to prohibit the presentation of scientific, medical, or statistical evidence to make such a comparison where appropriate." 29 C.F.R. § 1630.2(j)(1)(v).

f.   "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 29 C.F.R. § 1630.2(j)(1)(vi).

g.   "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(1)(vii).

h.   "An impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment." 29 C.F.R. § 1630.2(j)(1)(viii).

i.   "[I]n determining whether an individual is substantially limited in a major life activity, it may be useful in appropriate cases to consider, as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity." 29 C.F.R. § 1630.2(j)(4)(i).

j.   "Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way

an impairment affects the operation of a major bodily function. In addition, the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(4)(ii).

k. "In determining whether an individual has a disability under the 'actual disability' or 'record of' prongs of the definition of disability, the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population." 29 C.F.R. § 1630.2(j)(4)(iii)

l. "[A]ny private entity offering an examination covered by this section must assure that – (i) The examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability… the examination results accurately reflect the individual´s aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual´s [impairment]." 28 C.F.R. § 36.309(b)(1)(i).

32.    In September 2015, prior to the Defendant's first denial of Plaintiff's request for accommodations, the U.S. Justice Department issued an updated technical assistance manual for all testing entities wherein it explained:[3]

---

[3] http://www.ada.gov/regs2014/testing_accommodations.html (last visited February 15, 2018).

a. "If a candidate requests the same testing accommodations he or she previously received on a similar standardized exam or high-stakes test, provides proof of having received the previous testing accommodations, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant the same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate."

b. "Testing entities should defer to documentation from a qualified professional who has made an individualized assessment of the candidate that supports the need for the requested testing accommodations.  Qualified professionals are licensed or otherwise properly credentialed and possess expertise in the disability for which modifications or accommodations are sought.  Candidates who submit documentation (such as reports, evaluations, or letters) that is based on careful consideration of the candidate by a qualified professional should not be required by testing entities to submit additional documentation.  A testing entity should generally accept such documentation and provide the recommended testing accommodation without further inquiry."

c. "Reports from qualified professionals who have evaluated the candidate should take precedence over reports from testing entity reviewers who have never conducted the requisite assessment of the candidate for diagnosis and treatment.  This is especially important for individuals with learning disabilities because face-to-face interaction is a critical component of an accurate evaluation, diagnosis, and determination of appropriate testing accommodations."

d.  "A qualified professional's decision not to provide results from a specific test or

evaluation instrument should not preclude approval of a request for testing

accommodations where the documentation provided by the candidate, in its

entirety, demonstrates that the candidate has a disability and needs a requested

testing accommodation.  For example, if a candidate submits documentation from

a qualified professional that demonstrates a consistent history of a reading

disorder diagnosis and that recommends the candidate receive double time on

standardized exams based on a personal evaluation of the candidate, a testing

entity should provide the candidate with double time.  This is true even if the

qualified professional does not include every test or subtest score preferred by the

testing entity in the psychoeducational or neuropsychological report."

33.     Defendant's denial of Plaintiff's reasonable and well documented request is

arbitrary, without basis in fact or in law, and is deliberately indifferent to Plaintiff's civil rights

under the applicable laws.  Providing extended time to Plaintiff would not give him an unfair

advantage.  Mere curiosity, suspicion and/or speculation are not reasonable bases under the

applicable laws to require a burdensome level of proof of Plaintiff's disability.

### USMLE Step 1 and Step 2 CK

34.     "The United States Medical Licensing Examination (USMLE) is a three-step

examination for medical licensure in the United States and is sponsored by the Federation of

State Medical Boards (FSMB) and the National Board of Medical Examiners (NBME). The

USMLE assesses a physician's ability to apply knowledge, concepts, and principles, and to

demonstrate fundamental patient-centered skills, that are important in health and disease and that

constitute the basis of safe and effective patient care. Each of the three Steps of the USMLE

complements the others; no Step can stand alone in the assessment of readiness for medical licensure."[4]

35.    "Step 1 is a one-day examination. It is divided into seven 60-minute blocks and administered in one 8-hour testing session[.] The number of questions per block on a given examination form will vary, but will not exceed 40. The total number of items on the overall examination form will not exceed 280."[5]

36.    "Step 2 CK is a one-day examination. It is divided into eight 60-minute blocks, administered in one 9-hour testing session. Test item formats may vary within each block. The number of items in a block will be displayed at the beginning of each block. This number will vary among blocks, but will not exceed 40 items. The total number of items on the overall examination form will not exceed 318 items. Regardless of the number of items, 60 minutes are allotted for the completion of each block." [6]

37.    The NBME develops the USMLE which is administered at various test sites and on various dates throughout the United States, including Connecticut. The results of each student's scores are reported to that student's medical school.

38.    Plaintiff must pass the USMLE in order to maintain his eligibility to remain in medical school.  Passing the USMLE is a requirement for medical licensure in the United States and a failed attempt or poor performance on USMLE will adversely impact Plaintiff's professional opportunities.

39.    Plaintiff has already attempted USMLE Step 1 twice, without accommodations, and failed because the NBME denied him the extended time accommodations he needed to

---

[4] http://www.usmle.org (last visited February 15, 2018).

[5] http://www.usmle.org/step-1/ (last visited February 15, 2018).

[6] http://www.usmle.org/step-2-ck/ (last visited February 15, 2018).

complete the exam.  If Plaintiff does not take the USMLE with the extended time test accommodation that he requested, which is necessary to best ensure his access to the USMLE, he will continue to be irreparably harmed because he will face dismissal from medical school for no reason other than his low (unaccommodated) scores on the USMLE, and be denied an equal opportunity to complete his medical education and pursue a medical career.

40.     The accommodation requested by Plaintiff (50% extended test time) is an accommodation that has been granted to other test-takers with disabilities in prior administrations of the USMLE and would not fundamentally alter the test.

41.     Plaintiff is and will continue to be significantly harmed by Defendant's refusal to provide him the accommodations he needs so as to best ensure that the test results reflect that which the test is designed to measure rather than the effects of Plaintiff's disabilities.

42.     USMLE Step 1 and Step 2 CK do not claim to measure one's speed of reading or information processing, it claims only to measure one's fund of medical knowledge.

## CLAIM

**(Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*)**

43.     Plaintiff hereby incorporates by reference paragraphs 1 through 42 of this Complaint as set forth herein.

44.     Plaintiff is a person with a disability in that he experiences a physical or mental impairment, which substantially limits one or more major life activities, including but not limited to, reading, writing, concentrating, learning, working, taking tests, and the operation of the major bodily functions of the brain and neurological system. 42 U.S.C. § 12102 (2)(B). Because of his impairment he needs testing accommodations in order to take the USMLE on a level playing field.

45.     Plaintiff meets all the eligibility criteria for taking the USMLE.

46.     In amending the ADA in 2008, Congress mandated that the Equal Employment Opportunity Commission (EEOC) issue regulations restoring the applicability of the ADA to those whom Congress originally intended to protect. 42 U.S.C. §12010(b)(6).

47.     EEOC regulations provide that "[t]he primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted…" 28 U.S.C. §1630.1(c)(4).

48.     The ADA amendments expressly rejected earlier case law because previous judicial interpretations of what constituted a disability had created an inappropriately high level of limitation necessary to obtain coverage. 42 U.S.C. § 12102(4)(B) (incorporating findings and purposes of the ADAAA).[7]

49.     Title III of the ADA, which is enforced by the U.S. Department of Justice (hereinafter referred to as "the Department"), states in part, "It is discriminatory to fail to make reasonable modifications to policies, practices and procedures when necessary to provide goods and services to a person with a disability."  42 U.S.C. § 12182(b)(2)(A)(ii).

50.     Title III regulations specifically provide that accommodating an individual with a disability may require the testing entity to change the length of the time for an exam and/or the manner in which the examination is given.  28 C.F.R. §36.309 (b) (iii) (2).

---

[7] In passing the ADA Amendments Act of 2008, Congress unequivocally rejected Price v. Board of Medical Examiners, 966 F.Supp. 419 (S.D. W.Va. 1997), Gonzalez v. National Board of Medical Examiners, 225 F.3d 620 (6th Cir. 2000), and Wong v. Regents of University of California, 410 F.3d 1052 (9th Cir. 2005), as being inconsistent with the ADA's intent.   See 2 Cong. Rec. H 8286, 8291 (Sept. 17, 2008).

51.     Defendant NBME administers the USMLE, an examination related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

52.     The ADA requires Defendant to offer these examinations in a manner accessible to persons with disabilities. 42 U.S.C. § 12189.

53.     The Department regulations mandate that a private entity offering examinations modify its examinations as necessary to best ensure full and equal access to persons with disabilities, including through the provision of extra testing time to permit completion of such examinations. 28 C.F.R. §§ 36.309(b) and (c).

54.     The Department's regulations prohibit Defendant NBME from administering the USMLE without ensuring that the scores reported "accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b) (1) (i).

55.     Plaintiff requires testing accommodations to participate in a fair, full, and equal basis on the USMLE.  The modifications that Plaintiff needs would not impose a fundamental alteration but rather, would attempt to level the field and allow his medical knowledge and abilities to be fairly and accurately measured.

56.     Defendant NBME has thus discriminated, and continues to discriminate, against Plaintiff on the basis of his disability by intentionally denying him an equal opportunity to demonstrate his medical knowledge and skill on the USMLE in violation of the ADA, specifically 42 U.S.C. §12189.

57.     Defendant NBME's policies and practices violate Plaintiff's rights under the ADA and the regulations promulgated thereunder. Defendant's discriminatory policies and practices include, but are not limited to, its:

    a.  Failure to grant accommodations when Plaintiff submitted the requisite documentation consistent in all respects with the NBME's own guidelines;

    b.  Failure to defer to or give considerable weight to Plaintiff's evaluators' recommendations;

    c.  Failure to provide an adequate explanation for the NBME's request for additional and/or more recent information; and

    d.  Failure to engage in good faith in the interactive process to consider and implement effective reasonable accommodations for Plaintiff's disability.

58.     Plaintiff will be irreparably harmed if the NBME continues its illegal refusal to provide him the test modifications specifically recommended by his clinicians, in that:

    a.  Plaintiff has been unable to pass the USMLE without extended time accommodations (the same extended time accommodations he has formally received for more than 15 years);

    b.  Plaintiff will be dismissed from medical school if he is unable to pass the USMLE;

    c.  Requiring Plaintiff to take the UMSLE without sufficient accommodation puts him at distinct disadvantage;

    d.  Reduced performance on the USMLE as a result of not receiving the proper accommodations significantly reduces Plaintiff's future professional career options; and

    e.    Attempting USMLE Step 1, once again, without the test modifications requested would be a waste of Plaintiff's time and money.[8]

    f.    As a result of the NBME's denial of accommodations Plaintiff has experienced mood, sleep and appetite disturbance, and fatigue.

59.    As a result of the NBME's violations of the ADA, Plaintiff has suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

60.    The NBME's conduct constitutes an ongoing and continuous violation of the ADA.  Unless enjoined from doing so, Defendant will continue to violate the ADA.  Said conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law.  Consequently, Plaintiff is entitled to injunctive relief and reasonable attorney's fees under the ADA, 42 U.S.C. § 12188.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment as follows:

A.    An order compelling the NBME, or those acting as agents for or in concert with it, to provide test accommodations to Plaintiff, by providing him with 50% (time and-a-half) extended time for all future administrations of the USMLE, including Step 1, Step 2, and Step 3;

B.    An order granting such other injunctive relief as may be appropriate;

C.    An order granting declaratory relief;

D.    Enter judgment against the Defendant awarding Plaintiff recovery of his reasonable attorney's fees, costs and expenses incurred in pursuing his rights and in bringing and prosecuting this litigation;

E.    Award for such other and further relief as the Court may deem just and proper.

---

[8] *Bartlett v. New York State Bd. of Law Exam'rs,* 970 F.Supp. 1094, 1152 (S.D.N.Y.1997).

March 16, 2018                          Respectfully submitted,


                                        _____/s/_____
                                        Nancy B. Alisberg
                                        CT 21321
                                        Disability Rights Connecticut, Inc.
                                        846 Wethersfield Avenue
                                        Hartford, CT 06114
                                        Tel: 860.990.0175
                                        Fax: 860-296-0055
                                        nancy.alisberg@disabilityrightsct.org