UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| N.L., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL BOARD OF MEDICAL EXAMINERS, <br><br> Defendant. | Case No.: 3:18-cv-00455-AWT |

**DEFENDANT'S AMENDED OPPOSITION TO PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM**

Defendant files this Amended Opposition to correct a typographical error that has come to its attention located in the last sentence of its Introduction paragraph.

For reasons that follow, defendant National Board of Medical Examiners ("NBME") respectfully opposes plaintiff "N.L.'s" request to proceed under a pseudonym in this lawsuit. *See* Plaintiff's Motion to Proceed Under Pseudonym (ECF No. 2) *and* Plaintiff's Memorandum of Law in Support of Motion to Proceed Under Pseudonym (ECF No. 2-1) ("Pl. Mem.").

**INTRODUCTION**

Plaintiff is a medical school student. Complaint ¶ 16 (ECF No. 3). To date, he has not been able to achieve a passing score on Step 1 of the United States Medical Licensing Examination, or "USMLE." *Id*., ¶ 12. NBME provides for the administration of the USMLE. Plaintiff attributes his performance on the Step 1 exam to NBME's decision to deny his request for additional testing time. *Id*., ¶¶ 12, 20. Claiming to suffer from learning disabilities, he asked NBME to give him 50% more testing time than other examinees receive. *Id*., ¶¶ 17, 21. NBME

denied his requests. It did so because his supporting documentation did not establish that he is disabled within the meaning of the Americans with Disabilities Act ("ADA"). *Id*., ¶¶ 23, 26.

Plaintiff alleges that NBME violated the ADA by denying his requests for extra testing time on the Step 1 exam. *See id*., ¶¶ 43-60. He asserts a single cause of action and seeks an injunction that would require NBME to give him extra testing time. *Id.* at p. 21.

NBME denies that it violated the ADA in handling plaintiff's request for testing accommodations. NBME based its decision on input from an independent professional with expertise in learning disabilities. It followed its standard policies and procedures, which "are designed to ensure that individuals with bona fide disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage when taking the medical licensing examination. As administrator of the national exam used by a number of states for licensing medical doctors, the National Board has a duty to ensure that its examination is fairly administered to all those taking it." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 88-89 (2d Cir. 2004).

## PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY

This is a run-of-the mill ADA lawsuit involving a request for testing accommodations. Dozens of such lawsuits have been pursued in federal court, as have dozens of similar lawsuits involving requests for accommodations in the higher education context. While there have been

exceptions, these lawsuits are routinely pursued using the plaintiff's actual name.[1] In many of the cases, as here, the plaintiff bases his request for accommodations on a learning disability diagnosis.

According to the National Institutes of Health, millions of people been diagnosed with learning disabilities. *See* https://www.nichd.nih.gov/health/topics/learning/conditioninfo/risk. Learning disabilities are thus relatively common impairments, the presence of which cannot fairly be characterized as stigmatizing an individual in a way that will hurt them professionally.

Plaintiff is nonetheless seeking to proceed under a pseudonym. He asserts that pursuing this case under his actual name "will likely subject him to discrimination in employment and education and have a chilling effect on individuals with disabilities enforcing their civil rights." Pl. Motion at 1. He offers no support for these feared harms, specific to him or to his claimed impairments (learning disabilities). He points only to articles that discuss physicians who have mental health issues.[2] His request to proceed under a pseudonym should be denied.

---

[1] *See, e.g., Rawdin v. American Bd. of Pediatrics,* 582 Fed. Appx. 114 (3d Cir. 2014); *Turner v. Nat'l Council of State Bds. of Nursing,* 561 Fed. Appx. 661 (10th Cir. 2014); *Digianni v. Sptizer*, 2009 WL 742133 (2d Cir. 2009); *Powell v. Nat'l Bd. of Medical Examiners*, 364 F.3d 79 (2d Cir. 2004); *Bartlett v. New York Bd. of Law Examiners*, 226 F.3d 69 (2d Cir. 2000); *Gonzalez v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620 (6th Cir. 2000); *Black v. Nat'l Bd. of Medical Examiners*, 2017 WL 3840434 (M.D. Fla. 2017); *Bibber v. Nat'l Bd. Of Osteopathic Med. Examiners*, 2016 WL 1404157 (E.D. Pa. 2016); *Shaywitz v. American Bd. of Psychiatry and Neurology*, 848 F. Supp. 2d 460 (S.D.N.Y. 2012); *Rumbin v. Ass'n of American Medical Colleges*, 803 F. Supp.2d 83 (D. Conn. 2011); *Scheibe v. Nat'l Bd. of Medical Examiners*, 424 F. Supp.2d 1140 (W.D. Wis. 2006); *Baer v. Nat'l Bd. of Medical Examiners*, 392 F. Supp.2d 42 (D. Mass. 2005).

[2] *See* Pl. Mem. at 3 n.1 (citing an article titled "Breaking the Stigma -- A Physician's Perspective on Self-Care and Recovery," written by a physician with "a history of depression and suicidal ideation"; an article titled "Mental illness-related stigma in healthcare," which refers generically to physicians with "mental illnesses"; an article titled "Why doctors are leery about seeking mental health care for themselves," which discusses physicians with "suicidal thoughts" and "moderate to severe depression"; an article titled "Mental health and stigma in the medical profession," which also refers generically to physicians with mental health issues; and an article titled "Fear of stigma or sanction keeps many doctors from revealing mental health issues," which references physicians with "depression, anxiety and other [mental health] concerns"). None of the articles cited by plaintiff appear to have been discussing individuals with learning disabilities.

## LEGAL STANDARD

Rule 10(a) of the Federal Rules of Civil Procedure states that "[t]he title of [a] complaint must name all the parties." "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). "'Identifying the parties to the proceeding is an important dimension of publicness,'" because the "'people have a right to know who is using their courts.'" *Id*. (citation omitted). "Courts have nevertheless 'carved out a limited number of exceptions to the general requirement of disclosure [of the names of parties], which permit plaintiffs to proceed anonymously.'" *Id*. (citation omitted).

"[W]hen determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* Several factors should be considered in balancing these interests, along with any other factors that are relevant in a particular case:

> (1) whether the litigation involves matters that are "highly sensitive and [of a] personal nature,"
> 
> (2) "whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent non-parties,"
> 
> (3) whether identification presents other harms and the likely severity of those harms, including whether "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity,"
> 
> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age,
> 
> (5) whether the suit is challenging the actions of the government or that of private parties,
> 
> (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any

particular stage of the litigation, and whether any prejudice can be mitigated by the district court,

(7) whether the plaintiff's identity has thus far been kept confidential,

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity,

(9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities," and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189-90 (citations omitted).

### PLAINTIFF SHOULD NOT BE ALLOWED TO USE A PSEUDONYM

Although plaintiff notes the factors set forth above, his application of those factors to his situation is breezy at best.  *See* Pl. Mem. at 2-4.  This is not surprising, because a balancing of the relevant factors does not support allowing him to proceed anonymously:

(1)  The litigation does not involve matters of a "highly sensitive" and "personal" nature; millions of people have been diagnosed with learning disabilities, and lawsuits such as this are commonplace.

(2)  There is no risk of "retaliatory physical or mental harm" to plaintiff or to "innocent non-parties."

(3)  Other types of harm are not likely to occur if plaintiff's name is disclosed.

(4)  There is no reason to believe that plaintiff "is particularly vulnerable to the possible harms of disclosure"; he is an adult, and his alleged impairments carry no inherent stigma.

(5)  Plaintiff's suit challenges the actions of a private party, not the government.

(6)  NBME would be prejudiced by allowing plaintiff to proceed anonymously, insofar as it has been accused, by name, of engaging in unlawful and discriminatory conduct and is being

asked to defend those claims without the public knowing the name of NBME's accuser; the nature of this prejudice does not differ at any particular stage of the litigation.

(7)  NBME does not know whether plaintiff's name has been kept confidential to date, relative to his dispute with NBME or relative to his alleged disabilities.  He alleges that he has received accommodations in various other contexts, including at medical school, so the fact that he has been diagnosed with learning disabilities is known at least in those contexts.

(8)  As noted by the Second Circuit in *Sealed Plaintiff*, "people have a right to know who is using their courts."  That interest is clearly "furthered by requiring the plaintiff to disclose his identity."

(9)  This case is unlikely to generate an "atypically weak public interest in knowing the litigants' identities," as it does not involve issues of a "purely legal nature."  Plaintiff wants to become a licensed physician.  To do that, he must achieve passing scores on his licensing exams.  He has not yet been able to do so.  In an effort to get additional testing time on those exams, he claims in this lawsuit to be substantially limited in his ability to read, write, concentrate, think, learn, work, and take tests.  Complaint at ¶ 13.  He also claims to be substantially limited "in the operation of [his] brain and neurological functioning."  *Id.*, ¶ 14.  The public might well have a significant interest in this type of lawsuit.

(10)  There is no need for any alternative mechanisms to protect "the confidentiality of the plaintiff."  He has been diagnosed with learning disabilities, as have millions of other individuals.  And to the extent any of his medical records involve sensitive information, he can ask to have those records filed under seal.

Consistent with the analysis set forth above, numerous courts have held that a plaintiff may not litigate anonymously in cases directly analogous to the present case.  *See, e.g.*, *Smith v.*

*New York Presbyterian Hosp.*, 254 Fed. App'x 68 (2d Cir. 2007) (affirming denial of attorney's request to litigate her disability discrimination claims anonymously: "Because the law disfavors closed proceedings, lawsuits are rarely litigated under seal and few plaintiffs are granted leave to pursue claims under a pseudonym."); *Doe v. Univ. of Miami*, 2012 WL 12960871, *1-2 (S.D. Fla. 2012) (denying request by medical student with "ADHD and other unspecified mental disorders" to pursue his ADA claims anonymously, where plaintiff asserted that disclosing his name would result in "serious social stigma and impair his ability to find future employment").[3] These cases support denying N.L.'s request to proceed under a pseudonym.  *See also Doe v. Delta Airlines, Inc.*, 672 Fed. Appx. 48, 52 (2d Cir. 2016) ("The public interest in scrutinizing judicial proceedings combined with the prejudice Delta would face from defending against claims prosecuted by an anonymous person at trial far outweigh Doe's interest in not suffering professional embarrassment and any concomitant financial harm."); *Anonymous v. Medco Health Solutions, Inc.*, 588 Fed. Appx. 34, 35 (2d Cir. 2014) ("[Plaintiff] notes that [disclosure of his personal health information] would 'adversely impact his patient base' as 'he is a specialist who relies largely upon referrals from other physicians.'  But this claim is vague and far-fetched… [and] rather speculative in nature.") (affirming district court's denial of plaintiff's motion to

---

[3] *See also, e.g.*, Doe v. Nat'l Conf. of Bar Examiners, 2017 WL 74715, *2-4 (E.D.N.Y. 2017) (rejecting plaintiff's argument that she should be allowed to proceed anonymously because of concerns that disclosure of her name would jeopardize her career "in the legal profession"); *Doe v. Individual Members of the Indiana State Bd. of Law Examiners*, 2010 WL 106580, *1-2 (S.D. Ind. 2010) (upholding Magistrate's ruling that denied plaintiff leave to proceed anonymously in an ADA case, where plaintiff had an "anxiety disorder and post-traumatic stress disorder" and alleged that she needed to proceed anonymously to avoid "embarrassment and stigmatization"); *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 140-43 (S.D. Ind. 1996) (rejecting plaintiff's claim that he should be allowed to pursue his ADA claims anonymously because his "employment and other business interests" would be adversely affected if his medical condition were known, and noting that plaintiff had levelled "serious accusations" against" the defendants in a public forum:  "The concerns this plaintiff has raised are concerns that could be raised by plaintiffs in many employment discrimination cases, including many asserting claims for discrimination based upon disabilities.  This court's conclusion that this plaintiff should not be permitted to assert these claims under a fictitious name is consistent with decisions of other courts considering employment discrimination and other similar claims.") (citations omitted).

proceed anonymously); *Doe v. Wesleyan University*, No. 3:14-cv-01735-SRU, Unpublished Ruling and Order (ECF No. 30) (D. Conn. Aug. 20, 2015) (denying student's motion to proceed using a pseudonym in his Title IX discrimination lawsuit against his university, where plaintiff alleged that he had been wrongfully accused of "sexual misconduct" and that his "future career and educational prospects" would be harmed if his name were disclosed in the lawsuit); *Doe v. Wal-Mart Stores, Inc.,* 1997 WL 114700, *1 (D. Conn. 1997) (denying plaintiff employee's request to proceed anonymously in an ADA lawsuit, where plaintiff with manic depression asserted that his claim involved "extremely personal and confidential information").

## CONCLUSION

Plaintiff's motion to proceed under a pseudonym should be denied.

DATED:  April 13, 2018                                       Respectfully submitted,


                                                              /s/ Marcy Tench Stovall
                                                              Marcy Tench Stovall ct14238
                                                              Pullman & Comley LLC
                                                              850 Main Street
                                                              P.O. Box 7006
                                                              Bridgeport, CT 06601-7006
                                                              *mstovall@pullcom.com*
                                                              Telephone:  203-330-2104

                                                              Attorneys for National Board of Medical Examiners

## **CERTIFICATION**

I hereby certify that on this date, a copy of the foregoing was filed electronically. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated at Bridgeport, Connecticut this 13th day of April 2018.

                                                    /s/Marcy Tench Stovall
                                                    Marcy Tench Stovall (ct14238)